UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS T.D. POLK, individually and THOMAS T.D. POLK, as Special Administrator of the Estate of KATARZYNA KUREK-POLK, deceased,<br><br>              Plaintiffs,<br><br>    v.<br><br>PROGRESSIVE NORTHERN INSURANCE COMPANY, and SECURA SUPREME INSURANCE COMPANY,<br><br>              Defendants. | 24 C 00935 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This case arises from an insurance coverage dispute between Plaintiffs, Thomas T.D. Polk ("Tim"), individually, and Thomas T.D. Polk, in his capacity as Special Administrator of the Estate of Katarzyna Kurek-Polk, and Defendant insurance companies Progressive Northern Insurance Company ("Progressive") and Secura Supreme Insurance Company ("Secura," and collectively with Progressive, "Defendants"). In March 2021, Tim and his wife, Katarzyna Kurek-Polk, were involved in a major motor vehicle accident which resulted in the death of Katarzyna

1

Kurek-Polk. Plaintiffs bring this suit against Defendants seeking compensation under their respective underinsured motorist ("UIM") policies.

Before the Court are Defendants' individual motions for summary judgment and Plaintiffs' cross-motion for summary judgment. For the reasons that follow, Defendants' respective motions for summary judgment are granted and Plaintiffs' cross-motion for summary judgment is denied.

## BACKGROUND

On March 15, 2021, the Polks were driving along US Route 20 in Elgin, Illinois when they encountered a teenage driver who lost control of her vehicle and ran into a guard rail. The Polks exited their vehicle to assist the teenage driver on the side of the roadway. While the Polks were rendering aid to the teenage driver, another driver, Jose Alonso Sanchez, lost control of his vehicle and struck the Polks. As a result of the collision, Tim was injured. Ms. Kurek-Polk lost her life.

The Polks received $100,000 from Sanchez's personal automobile insurance policy for their bodily injury and wrongful death claims against Sanchez. At the time of the accident, the Polks had three separate insurance policies with UIM coverage: $500,000 with Progressive, $500,000 with Secura, and $1,000,000 with AMCO Insurance Company ("AMCO"). Plaintiffs filed UIM claims under each of these policies. AMCO initially denied UIM coverage to the Polks because they were not occupying an automobile as defined in the policy. Plaintiffs filed a breach of contract and bad faith claim against AMCO, and settled the case for $800,000. Secura made

2

Plaintiffs a settlement offer of $220,000, which Plaintiffs rejected. Progressive has not made any payments to Plaintiffs under its UIM policy.

The summary judgment motions raise three main disputes between the parties: (1) the maximum amount of UIM coverage available under the Secura policy; (2) the amount of money Plaintiffs are entitled to under the Secura policy; and (3) whether Progressive has an obligation to pay Plaintiffs under its UIM policy if Plaintiffs have already received the maximum amount of UIM coverage available. The Court considers each issue in turn.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021).

3

Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

### I. Both Progressive and Secura's Policies Provide Per Accident Coverage

The parties dispute whether the UIM coverage policy limits apply to Tim and Kasia individually or for the accident as a whole. Plaintiffs argue that at the time of the accident, both Tim and Kasia were individually insured under each of the applicable policies, and therefore, the policy limits apply per person. Under Plaintiffs' interpretation, both Tim and Kasia are entitled to $500,000 in UIM coverage each instead of $500,000 in total. This interpretation, however, is inconsistent with the plain language of the policy.

"[B]ecause an insurance policy is a contract, we apply general rules of contract interpretation." *Nationwide Prop. and Cas. Ins. Co. v. State Farm Fire and Cas. Co.*, 2022 IL App (1st) 210267, ¶ 25. "The court's primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *State Farm Mut. Auto. Ins. Co. v. Arroyo*, 2023 IL App (1st) 221057, ¶ 14 (internal quotations omitted). "The construction we give to an insurance policy should be a natural and reasonable one." *Gillen v. State Farm Mut. Auto. Ins. Co.*, 215 Ill. 2d 381, 393 (2005). "If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). "Whether an ambiguity exists turns on whether the policy language is

4

subject to more than one reasonable interpretation." *Id*. If a policy provision is subject to competing reasonable interpretations, then the court will construe the insurance contract in favor of the insured. *See W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 32.

The declaration page in the Secura policy names Tim and Kasia as the insured parties in the policy. Underneath the names of the insured, the policy states a single premium of $3,249 for the entire policy. Right below this information, the policy outlines four vehicles which are covered under the policy. Under the coverage section for each of the covered vehicles, the policy states that there is a coverage limit of $500,000 each person/$500,000 each occurrence. Now, reading this provision alone, one could argue that the provision is ambiguous as it is unclear when the per person or per occurrence limit applies. However, if read in conjunction with the UIM coverage section, which the rules of contract interpretation requires, *see Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 328 (7th Cir. 2016), it is clear that Secura's UIM coverage provides $500,000 per accident, not per person.

The relevant UIM endorsement contains a "Limit of Liability" section which provides in relevant part:

> The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum

5

> limit of liability for all damages for bodily injury resulting from any one accident.
>
> This is the most we will pay regardless of the number:
>
> 3. Insureds

Ex. 2.

The plain language in this provision makes it clear that $500,000 per accident is the UIM coverage limit even though the endorsement provides coverage to two people. If Plaintiffs' interpretation of the policy were correct, the second half of the "Limit of Liability" section would be meaningless. The Court declines Plaintiffs' invitation to construe the policy in a manner that effectively nullifies part of the policy. *See Pekin Ins. Co. v. Wilson*, 23, 237 Ill. 2d 448, 466 (2010) (a court "will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous") (citing *Cincinnati Ins. Co. v. Gateway Constr. Co.*, 372 Ill. App. 3d 148, 152 (2007)).

The same is true of the Progressive policy. Progressive's UIM endorsement also contains a "Limit of Liability" section. It provides in relevant part:

> The limit of liability shown on the declarations page for Uninsured/Underinsured Motorist Coverage is the most we will pay regardless of the number of:
>
> 1. claims made;
> 2. covered motorcycles;
> 3. insured persons;
>
> If the declarations page shows that "combined single limit" or "CSL" applies, the amount shown is the most we will pay for the total of all bodily injury damages resulting from any one accident.

6

Ex. 3

Here, the declaration page for the Progressive policy states that there is a $500,000 combined single limit under the UIM endorsement. Under the plain language of the policy, the only reasonable interpretation of this provision is that $500,000 is the most Progressive will pay for any injuries resulting from a single accident, regardless of the number of insured persons. Thus, the highest amount of UIM coverage available under the Progressive policy is $500,000 in total.

We find that under both the Secura and Progressive policies, the coverage limit for any claims arising from the March 2021 accident is $500,000.

## II. Progressive's Financial Obligation to Plaintiffs

The Progressive Policy also contains an anti-stacking clause which is meant to prohibit insureds from combining multiple UIM policies to increase available coverage limits. Illinois law authorizes the use of anti-stacking provisions in motor vehicle insurance policies. *See* 215 ILCS 5/143a.

Progressive argues it is not liable for any UIM coverage payments to the Polks because, under the terms of the policy, the Polks are only entitled to the highest amount of UIM coverage available under any of the three policies, which in this case is $1,000,000. Because the Polks already received $900,000 from Sanchez and AMCO and have been offered $220,000 from Secura, Progressive argues that the Polks should not be able to recover under the Progressive policy because it would result in a recovery more than the $1,000,000 UIM coverage limit. We agree.

7

The UIM anti-stacking provision provides, in relevant part:

> If there is other applicable uninsured or underinsured motorist coverage, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all available coverage limits. If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest limit of liability under any one policy.

Ex. 3.

Plaintiffs argue that allowing Progressive to circumvent its contractual duty to provide UIM coverage simply because they were the last to pay would be against public policy. However, anti-stacking clauses in general do not contravene public policy. *Hess v. Est. of Klamm*, 2020 IL 124649, ¶ 16. Thus, the anti-clause provision will be enforced as written so long as it is not ambiguous. *Id*.

The first sentence of the provision states that if there are other insurance policies that provide UIM coverage, then Progressive will only pay its share of damages. The second sentence contains a pro rata clause which states that Progressive's liability is the pro rata share of the total of all applicable limits. The parties do not dispute that the Progressive and Secura policies both provide UIM coverage, and that Progressive's proportional share is 25% of the maximum amount of recovery available.

The last sentence limits the UIM coverage amount to the highest limit of liability under one policy. Plaintiffs do not argue that this provision is ambiguous, nor can they. The clause unambiguously states that the limit of liability is the highest limit under any applicable policy. There is no other reasonable way to interpret this language.

Again, the highest UIM coverage limit is $1,000,000. Because the Polks received $900,000 and Secura offered $220,000, Progressive's anti-stacking provision precludes the Polks from additional recovery under the Progressive policy. This aligns with the general principal that the purpose of UIM coverage is to "fill the gap" between the tortfeasor's insurance and the UIM coverage purchased by the insured, not to provide extra coverage. *Miecinski v. State Farm Mut. Auto. Ins. Co.*, 2024 IL App (1st) 230193, ¶ 28.

### III. Secura's Financial Obligation to Plaintiffs

The only issue that remains is how much Secura needs to pay. Secura argues that the UIM coverage in this case is limited to $220,000. Plaintiffs argue that Secura's UIM coverage amounts to $235,000 for each Plaintiff. However, as described above, Secura's UIM coverage is per accident, not per person.

Nonetheless, this issue is essentially mooted by the Court's finding that Plaintiffs may not recover more than $1,000,000. Plaintiffs received $900,000 for their claims, so whether Secura is required to pay $220,000 or $235,000 is irrelevant because the most Secura owes is $100,000. Secura's settlement offer of $220,000 more than exceeds Secura's financial obligation to Plaintiffs.

### CONCLUSION

For the foregoing reasons, Progressive's motion for summary judgment [20] and Secura's motion for summary judgment [24] are granted. Progressive has no obligation to make any UIM payments to Plaintiffs. Secura is only required to pay $100,000 to

9

Plaintiffs. Plaintiffs' cross-motion for summary judgment [27] is denied. Civil case terminated. It is so ordered.

Dated: March 18, 2025

_____
Charles P. Kocoras
United States District Judge